[Cite as *State v. Godfrey*, 2019-Ohio-3426.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY


STATE OF OHIO,

     PLAINTIFF-APPELLEE,               CASE NO. 1-19-26

     v.

MASON R. GODFREY,                O P I N I O N

     DEFENDANT-APPELLANT.


Appeal from Lima Municipal Court
Trial Court No. 18TRC1835-B4

Judgment Affirmed

Date of Decision:  Augusts 26, 2019


APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *Lisa R. Bradley* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Mason Godfrey ("Godfrey"), brings this appeal from the May 3, 2019, judgment of the Lima Municipal Court sentencing him to 60 days in jail, with 50 suspended on various conditions, after Godfrey pled no contest to, and was convicted of, OVI in violation of R.C. 4511.19(A)(1)(h). On appeal, Godfrey argues that the trial court erred by overruling his suppression motion.

*Background*

{¶2} On October 27, 2018, shortly after 2 a.m., multiple Lima Police Officers were dispatched to a bar called Harry's Hideaway on Cable Road in Lima for reports of a fight. Officer Kaitlyn Weidman and Officer Ben Thompson went into the bar where there were over 100 people and completed a walkthrough looking for the problem. While in the bar, both officers observed Godfrey. Officer Thompson indicated that Godfrey had slurred speech, that he was "falling all over the place," that he had bloodshot, glassy eyes, and that he was "arguing with a female over car keys." (Tr. at 7). Officer Weidman also observed Godfrey arguing with a female over the keys to a vehicle. Officer Weidman described him as "highly intoxicated at that time." (*Id*. at 12). More specifically, Officer Weidman stated that Godfrey smelled like alcohol and that his speech was very slurred.

{¶3} Minutes later, Officer Thompson was outside speaking with the bar's bouncer when he observed Godfrey get into the driver's side of a vehicle. Officer

Thompson radioed Officer Weidman and told her to pull Godfrey over if he failed to stop at the "sidewalk." Officer Weidman observed Godfrey leaving and pull onto the road. She stated that she felt Godfrey failed to yield when he entered Cable Road, then she pulled him over both for that failure to yield and for the observations of his intoxication inside the bar.

**{¶4}** As a result of the traffic stop, Godfrey's BAC was taken by a breath test and his BAC was .171. Subsequently Godfrey was charged with OVI in violation of R.C. 4511.19(A)(1)(a), and alternatively OVI in violation of R.C. 4511.19(A)(1)(h). He was also charged with Driving Under Suspension in violation of Lima City Ordinance 436.11(a), and Failure to Yield in violation of Lima City Ordinance 432.22(a)(1). Godfrey initially pled not guilty to the charges.

**{¶5}** On December 10, 2018, Godfrey filed a suppression motion. That motion was supplemented on January 7, 2019, once Godfrey received dash camera video from the incident. In his motion, Godfrey argued that there was no legal basis to stop him for a "Failure to Yield" violation based on Lima City Ordinance 432.22(a)(1). More specifically, he argued,

> **Mr. Godfrey is seen clearly pulling up to one of the exits between Bob Evans and Harry's Hideaway on Cable Road just north of the intersection at that location. At the time, he turned right onto Cable. To his immediate left were several cruisers stopped to attend to another driver, with a red light for north-bound traffic. Therefore, not only was there no impacted traffic at all, no impact on traffic was even possible because all traffic northbound was blocked and stopped by both LPD cruisers and a red light.**

> **One of the officers can be heard on Kaitlyn Weidman's radio telling her that she could stop Mr. Godfrey if he did not stop at the sidewalk. If there was a sidewalk, then a stop would be required. However, there clearly is no sidewalk at this location.**
>
> **Thus, the purported basis for the stop, namely a violation of L.C.O. 432.22(A)(1), was nonsensical.**

(Doc. No. 10).

{¶6} The matter proceeded to a suppression hearing on March 22, 2019. At the hearing, the State presented the testimony of Officers Ben Thompson and Kaitlyn Weidman of the Lima City Police Department. They testified to their actions and observations that night. Officer Weidman testified that she ultimately stopped Godfrey's vehicle at approximately 2:14 a.m. When asked why she stopped him, she testified, "The defendant entered the roadway quickly, failing to yield to traffic. I also knew he was intoxicated from the observations I made in close range at the bar." (Tr. at 16).

{¶7} On cross-examination, Officer Weidman admitted that there was no sidewalk in the area, that there was no vehicle or pedestrian traffic, and that there was a red light to Godfrey's left when he was entering the street. Dash camera footage was entered into evidence.

{¶8} The trial court then asked Officer Weidman again why she stopped Godfrey's vehicle and she testified, "Because I observed him to be impaired, and he failed to stop prior to entering the roadway." (Tr. at 18).

{¶9} Godfrey testified at the suppression hearing on his own behalf, indicating that he did not see any fighting inside the bar, that the bar was crowded, and that he was never that close to an officer for them to observe him.

{¶10} At the conclusion of the hearing, the trial court overruled the suppression motion, finding as follows.

> **All right. I do find that there's reasonable suspicion for the stop with the observation of Mr. Godfrey. It has been testified to that he was inebriated, an observation that he got in the car to operate it shortly thereafter, and so far, the Court deny** [sic] **the motion to suppress.**

(Tr. at 21). A journal entry denying the suppression motion was filed March 27, 2019.

{¶11} Subsequently, Godfrey entered into a plea agreement with the State wherein he agreed to plead no contest to OVI in violation of R.C. 4511.19(A)(1)(h), and in exchange the State would dismiss the remaining charges, and not oppose a stay of the sentence pending appeal.

{¶12} On May 3, 2019, Godfrey pled no contest pursuant to the plea agreement and he was found guilty of OVI in violation of R.C. 4511.19(A)(1)(h). He was sentenced to serve 60 days in jail, with 50 days suspended on various

conditions. A judgment entry memorializing Godfrey's conviction and sentence was filed that same day.[1]

{¶13} It is from this judgment that Godfrey appeals, asserting the following assignment of error for our review.

**Assignment of Error**
**The trial court erred by denying Mr. Godfrey's motion to suppress, in violation of his rights under the Ohio and United States Constitutions.**

{¶14} In his assignment of error, Godfrey argues that the trial court erred by denying his suppression motion. Specifically, he argues that the State did not meet its burden of proof, that the officer stopped Godfrey for a traffic violation that did not occur, that the State should not prevail if the officers added observations of intoxication at the motion hearing, and that the trial court did not make factual findings that were supported by competent credible evidence.

Standard of Review

{¶15} "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id*. citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). When

---

[1] Godfrey did request that his sentence be stayed pending appeal, and that request was granted.

reviewing a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8 citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id*. citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

Relevant Authority

{¶16} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. "Its protections extend to brief investigative stops that fall short of traditional arrests." *State v. Hairston*, 156 Oh St.3d 363, 2019-Ohio-1622, ¶ 9, citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). An officer may perform such a stop when the officer has a reasonable suspicion based on specific and articulable facts that criminal behavior has occurred or is imminent. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

{¶17} The reasonable-suspicion standard is less demanding than the probable-cause standard used when analyzing an arrest. *Hairston* at ¶ 10 citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). "The determination whether an officer had reasonable suspicion to conduct a *Terry* stop

must be based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *Id.* quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

Analysis

**{¶18}** In his assignment of error, Godfrey argues that the trial court erred by denying his suppression motion. He claims that Officer Weidman had no basis under Lima City Ordinance 432.22(a)(1) to conduct a traffic stop of his vehicle.[2] He contends that the video footage entered into evidence at the suppression hearing established that there was no traffic that Godfrey "failed to yield" to because police had the road blocked off and there was a red light to Godfrey's left.[3] Godfrey then argues that because Officer Weidman was not credible in her assertion that there was a reasonable suspicion to stop Godfrey's vehicle for failure to yield to

---

[2] Failure to Yield in violation of Lima City Ordinance 432.22(a)(1) reads, "The operator of a vehicle about to enter or cross a highway from any place other than another roadway shall yield the right-of-way to all traffic approaching on the roadway to be entered or crossed."

[3] In addition, Godfrey argues that the police actually charged Godfrey under the wrong Lima City Ordinance. He claims that he was coming off of a private road or driveway and thus should have been charged under Lima City Ordinance 432.22(b)(1) reads, "The driver of a vehicle emerging from an alley, building, private road or driveway within a business or residence district shall stop the vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across the alley, building entrance, road or driveway, or in the event there is no sidewalk area, shall stop at the point nearest the street to be entered where the driver has a view of approaching traffic thereon." Regardless of which ordinance should have applied, Godfrey argues that no violation of either ordinance occurred. As the appeal does not turn on this issue of the traffic violation at all, we will not further address it.

-8-

nonexistent traffic, she could not be found credible in her alternative reasoning for stopping Godfrey based on his observed intoxication inside the bar.[4]

{¶19} At the outset of our review, we emphasize that at the suppression hearing, Officer Weidman testified that she had two separate and distinct reasons for stopping Godfrey's vehicle: 1) Godfrey's intoxication inside the bar, and 2) Godfrey's failure to yield when entering the roadway. The trial court heard the testimony at the suppression hearing, reviewed the video footage, and then determined that, "I do find that there's reasonable suspicion for the stop with the observation of Mr. Godfrey. It has been testified to that he was inebriated, an observation that he got in the car to operate it shortly thereafter[.]" (Tr. at 21).

{¶20} The trial court's verbal ruling at the hearing indicates that it based its finding overruling the suppression motion on the officers' observations of Godfrey's intoxication prior to getting into his car. It does not actually appear based on the trial court's stated finding that the trial court placed any emphasis or gave any credence to the purported failure to yield. Thus while Godfrey focuses his argument on appeal on his claim that there was no failure to yield, we must review

---

[4] Godfrey contends in his brief that the written discovery provided only "failure to yield" as the reasoning for the stop. He indicates that the State shifted its reasoning at the suppression hearing to add the second reason for stopping Godfrey's vehicle, namely that he was observed by the officers to be intoxicated inside the bar. He implies that this reason was not included in the written discovery. As the discovery was not filed with this Court, we can say nothing on the matter. However, the trial court was in a better position to evaluate the credibility of the witnesses, and found the officers' testimony regarding their observations in the bar to be credible.

the trial court's determination that the observation of Godfrey's intoxication supported the traffic stop.

{¶21} In reviewing the trial court's determination, both Lima Police Officers testified that they observed Godfrey in an intoxicated state inside the bar, arguing with a female over the keys to a vehicle. Godfrey himself admitted to being in the bar, though he denied being close to the officers at any point. Godfrey was then observed getting into a vehicle and driving it away from the bar.

{¶22} Although Godfrey challenges the credibility of the officers' testimony, the trial court was in a better position to evaluate the credibility of the officers, and to determine if any inconsistencies between the video of the purported failure to yield with the testimony regarding the purported failure to yield should have had any impact on the officers' claims regarding Godfrey's intoxication inside the bar. In its capacity as trier-of-fact, the trial court found that the officers were credible regarding Godfrey's intoxication. The testimony supports the trial courts factual findings.

{¶23} Applying the facts to the law, the officers' observations of Godfrey intoxicated inside the bar only minutes before with slurred speech, "falling all over the place," would give an officer reasonable suspicion to stop Godfrey's vehicle. *See State v. Robinson*, 5th Dist. Stark No. 2003CA00235, 2004-Ohio-1571, ¶¶ 24-25 (reasonable suspicion existed to stop defendant in parking lot where agent

observed defendant seated at bar with slurred speech, drinking beer, and when defendant stood up, he swayed and stumbled while walking around the bar); *Westlake v. Jordan*, 8th Dist. Cuyahoga No. 84289, 2004-Ohio-6022, ¶¶ 18-21 (officer justified in investigative stop when receiving a reliable tip that driver was intoxicated); *State v. Greene*, 2d Dist. Montgomery No. 19163, 2002-Ohio-1886 (A *Terry* stop may be made where an officer observed a defendant beginning 50 feet from his car having trouble walking, staggering, and with balance problems, and the officer saw the defendant heading towards the driver's side of the car.); *State v. Campbell*, 68 Ohio App.3d 688, 690-91, 589 N.E.2d 452, 454 (1st Dist.1990) ("Had Officer McQuade personally observed the defendant consuming the wine, the information, when communicated to Deputy Nickoson, would carry sufficient indicia of reliability to justify an investigative stop by Deputy Nickoson under the totality of the circumstances, as part of a common investigation."). Moreover, case authority establishes that officers can stop an individual's vehicle when they have a reliable tip that a defendant is intoxicated. *See Westlake*, *supra*. If officers can stop based on a reliable tip, they certainly can stop an individual based on their own observations of intoxication, particularly where the signs of intoxication were as defined as they were in this case. *See Id.*

{¶24} On the facts before us we cannot find that the trial court erred by finding that there was reasonable suspicion to stop Godfrey's vehicle based on his observed intoxication.  Therefore, his assignment of error is overruled.

*Conclusion*

{¶25} For the foregoing reasons, Godfrey's assignment of error is overruled and the judgment of the Lima Municipal Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and PRESTON, J., concur.**

**/jlr**